IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| GARY J. BELL, SR., ) | |
| ) | |
| Petitioner, ) | CIVIL ACTION |
| ) | |
| v. ) | No. 04-3248-KHV |
| ) | |
| L. E. BRUCE, et al., ) | |
| ) | |
| Respondents. ) | |
| _____) | |

## MEMORANDUM AND ORDER

On July 25, 1997, the District Court of Sedgwick County, Kansas, convicted Gary J. Bell, Sr. of second degree murder. This matter is before the Court on petitioner's Petition For A Writ Of Habeas Corpus Pursuant To 28 U.S.C § 2254 By A Person In State Custody (Doc. #1) filed August 10, 2004; Motion For An Evidentiary Hearing, And Appointment Of Counsel (Doc. #19) filed March 8, 2005; Application To Proceed In Forma Pauperis (Doc. #20) filed March 8, 2005; Motion For An Order To Compel The Kansas Department Of Correction And Its Facilitys [sic] Not To Limit Petitioner's Legal Material Needed (Doc. #22) filed April 8, 2005; and Report And Recommendation (Doc. #26) filed July 7, 2005 by Magistrate Judge David J. Waxse.

**I.    Procedural Background**

On February 27, 1997, in the District Court of Sedgwick County, Kansas, the district attorney charged Bell with second degree murder in violation of K.S.A. § 21-3401(a). See Complaint/Information in No. 97 CR 0422. On July 25, 1997, a jury found Bell guilty as charged. Verdict, No. 97 CR 0422. On July 28, 1997, Bell filed a motion for a new trial and for judgment of acquittal, both of which the district court denied on August 26, 1997. On September 24, 1997, the district court sentenced Bell to life in

prison.

Bell appealed his conviction to the Kansas Supreme Court, arguing that the trial court erred in (1) failing to give a jury instruction on voluntary manslaughter; (2) failing to give a jury instruction on involuntary manslaughter; and (3) giving a jury instruction outside his presence. See Brief of Appellant, State v. Bell, 266 Kan. 896, 975 P.2d 239 (1999) (No. 97 CR 422). On March 5, 1999, the Kansas Supreme Court affirmed Bell's conviction. Specifically, it found that (1) because the evidence did not show that the victim provoked defendant, the trial court did not err in failing to give an instruction on voluntary manslaughter; (2) because the evidence did not show that defendant acted in self defense or killed the victim unintentionally, the trial court did not err in failing to give an instruction on involuntary manslaughter; and (3) the trial court's written response to a jury question, when defendant was not present and had not waived his right to be present, constituted harmless error. See State v. Bell, 266 Kan. 896, 917-19, 975 P.2d 239, 252-54 (1999).

On April 11, 2000, Bell filed a state motion for post-conviction relief under K.S.A. § 60-1507. Bell asserted eight issues: (1) the trial court erred when it overruled his motion to suppress his statements to police; (2) the trial court erred when it allowed the State to impeach his trial testimony; (3) the trial court erred when it allowed the State to introduce evidence of the victim's good character in its case in chief; (4) the trial court erred when it allowed the State to introduce a letter from Bell to his wife; (5) counsel for both sides denied Bell's due process rights by striking females from the jury; (6) defense counsel was ineffective in pretrial preparation; (7) the trial court erred in allowing the State to introduce evidence of Bell's prior relationship with his common law wife; and (8) the trial court denied Bell due process under the Sixth and Fourteenth Amendments which provide protection against denial of fundamental fairness.

See Brief In Support Of K.S.A. 60-1507 Writ Of Habeas Corpus filed April 11, 2000 (No. 00C1139). On June 14, 2000, the district court denied relief without a hearing. Order/Minute Sheet filed June 28, 2002 in No. 00C1139.

Bell appealed the denial of post-conviction relief to the Kansas Court of Appeals. Bell asserted that (1) the trial court erred in denying relief without an evidentiary hearing; (2) the trial court erred in overruling his motion to suppress and counsel was ineffective because she was not prepared with case law to support the motion; (3) the trial court erred when it permitted the State to impeach his testimony and counsel was ineffective because she did not object to the impeachment; (4) the trial court erred when it allowed the State to introduce evidence of the victim's good character in its case in chief and that counsel was ineffective because she did not object; (5) the trial court erred when it allowed the State to introduce a letter from Bell to his wife and counsel was ineffective because she did not object on the grounds of marital privilege; (6) counsel for both sides denied him due process and equal protection by striking females from the jury; (7) counsel provided ineffective assistance in pretrial preparation based on gender discrimination in jury selection and in failing to object to evidence and testimony; (8) the trial court erred in allowing the State to introduce evidence of a discordant relationship between Bell and his common law wife and counsel was ineffective because she did not object to such evidence; and (9) cumulative errors denied him due process under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and the Kansas Constitution, which provide protection against denial of fundamental fairness. On March 22, 2002, the Kansas Court of Appeals denied relief in part and remanded for further proceedings. Bell v. State, No. 85,820 (Kan. Ct. App. Mar. 22, 2002) (unpublished opinion). The Court of Appeals remanded Bell's ineffective assistance claim with regard to pretrial preparation (#7) and Bell's

claim of cumulative error (#9). It determined that counsel's failure to object to admission of the letter from Bell to his wife (#5) constituted harmless error. It acknowledged that Bell's claims of error in denial of his motion to suppress (#2) and in the method of jury selection (#6) raised constitutional issues, but stated that he made no showing of exceptional circumstances which allowed him to raise the claims without first raising them on direct appeal. The Court of Appeals specifically noted that Bell's argument that trial counsel was unprepared for the suppression hearing was not raised below and was "nonetheless completely without merit." Id. at 6. Because Bell did not raise on direct appeal his other claims of trial error, the Court of Appeals also determined Bell had waived those claims. It did not consider Bell's other ineffective assistance claims because he did not raise them in his Section 60-1507 motion.[1]

On October 31, 2002, the trial court conducted a full evidentiary hearing to address the two issues on remand – pretrial preparation and cumulative error – and denied relief on both claims. Trial counsel did not testify at this hearing. On February 20, 2004, the Kansas Court of Appeals rejected Bell's appeal, stating that because strong evidence supported the guilty verdict, additional witnesses would not have altered the outcome of the trial and Bell had "failed to present substantial evidence of mistakes by trial counsel that would support his cumulative error claim." On May 26, 2004, the Kansas Supreme Court denied Bell's petition for review.

On August 10, 2004, Bell filed a *pro se* petition for writ of habeas corpus in this Court, asserting the following claims: (1) trial counsel was ineffective in seven respects; (2) he did not receive a fair trial because counsel and the State engaged in gender discrimination in jury selection; (3) the trial court erred

---

[1] For unknown reasons, the Kansas Court of Appeals did not specifically mention Bell's ineffective assistance claim based on gender discrimination during jury selection.

in failing to suppress his statements to law enforcement officials after he invoked his Fifth Amendment right to counsel; (4) Bell was denied due process rights because trial counsel did not testify at the evidentiary hearing; and (5) cumulative error.[2] As to Bell's ineffective assistance claims, he argues that trial counsel (1) did not adequately prepare for and argue his motion to suppress; (2) did not object to the State's impeachment of his trial testimony; (3) did not object to the State's introduction during its case in chief evidence that the victim had good character; (4) participated in gender discrimination during jury selection; (5) did not object to the State's introduction of Bell's letter to his wife; (6) did not subject the State's case to meaningful adversarial testing; and (7) provided ineffective pretrial preparation. See Petition For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 By A Person In State Custody (Doc. #1) filed on August 10, 2004.

## II.  Evidence At Trial

Bell and Stella Bell ("Stella") married in 1982 and had one son, Jeremy. Stella had two older sons, Rocky and Bradley. Bell and Stella divorced in 1993, and Stella moved back in with Bell after living apart for approximately two weeks. By February of 1997, Stella decided to leave Bell. On Saturday, February 22, 1997, Bell, Stella and Jeremy went to Champs, a bar and grill in Cheney, Kansas, for dinner. At Champs, Bell confronted Jason Morris because he believed that Morris and Stella had a sexual relationship. Bell told Morris that he "could have her" and left Stella and Jeremy after telling them to "have a nice life." Trial Transcript ("Tr.") at 244.

---

[2]  Bell's petition asserts somewhat different claims than his brief does. The Court liberally construes his petition and attempts to address all claims asserted but categorizes his claims as set forth in his brief.

5

That night Stella and Jeremy stayed with Paul Madden, a friend of Stella's with whom she had previously discussed having a relationship. Stella worked at the Taylor Mart in Cheney. On Sunday, February 23, Bell went to Taylor Mart and asked Stella why she did not come home. Stella told Bell that she would not be coming home and that Jeremy was staying with one of her friends.

On Monday, February 24, Bell went to the Taylor Mart around the start of Stella's shift at 5:30 a.m. Stella had not shown up for work, and Bell called her at Madden's apartment. Believing that Bell might cause problems when she showed up for work, Stella called Cheney Police Chief H.D. Lubbers, Jr., and asked him to meet her at the store. Bell stayed at the Taylor Mart for about ten minutes after Stella arrived at work. Bell showed up again in the evening. Stella told him that she was going to enroll the kids in school in Cheney. With Stella and Jeremy present, Bell pulled out a gun, placed it in his mouth, and said, "I'll end it all right here and that way there won't be no problems." Id. at 250.

On February 25, Stella, Madden, Bradley and Jeremy went to retrieve items from Bradley's locker at school in Kingman, Kansas. Bell confronted Stella and Madden in the school and asked to speak with Madden. Stella refused. The group went to Bell's house to retrieve Stella's personal items, which Bell had placed in the back of his pick up truck. Stella testified that Bell begged her to come home and stated that he still loved her. Rocky testified that after Stella left, Bell said that he had been controlling himself not to pull out a gun out and shoot Madden. Rocky also testified that on Wednesday, Bell placed a cocked .38 in his mouth and Rocky had to talk him out of killing himself.

On February 27, Bell showed up at Taylor Mart at 6:00 a.m. for the beginning of Stella's shift. He remained there for much of the morning. Madden brought Stella's sons to the store around 8:00 a.m. Bell left later in the morning. At approximately 12:15 p.m., Bell stopped by the home of Chief Lubbers to verify

6

that Stella had spoken with him about finding a trailer to move into. At about 12:30 p.m., Madden took Stella lunch at the Taylor Mart but left when he saw Bell pull into the parking lot. Stella testified that Madden walked to his truck and Bell walked towards Madden's truck. Stella ran outside, saw Bell standing at the window of Madden's truck, and began questioning Bell. Madden put the truck in reverse. Bell told Stella, "But he's done killed me," and pulled out a gun. Bell fired the gun as Stella jumped on his back. Stella thought she heard five shots, and she ran back into the store.

Bell testified at trial. Bell said that he saw Madden's truck when he pulled into the Taylor Mart parking lot, and he waited in his van for a few minutes. Bell said that he reached the door of the store as Madden was leaving. According to Bell, he spoke briefly with Madden, and Stella came outside and yelled at Bell. Stella began pushing Bell and Bell said, "Stella, this is killing me." Stella said, "he's got a gun." Bell assumed that Stella was referring to Madden as having the gun. He pushed Stella out of the way and saw that Madden had something in his right hand. Bell pulled out his gun and shot once at Madden's hand. Bell testified that he next remembered the click of the empty gun.

Other witnesses testified that Bell stood outside Madden's truck and appeared to reach into the truck. Several witnesses saw Stella push Bell and jump on his back. The witnesses differed in their testimony as to the number of shots and the succession in which Bell fired the shots. One witness reported four shots while several others reported six shots.

The coroner testified that Madden sustained five bullet wounds, three in his back, one on his shoulder and one on his right thumb. The back wounds were fatal. Police found a pack of cigarettes and two lottery tickets on the ground near Madden's body, all with bullet holes. When Chief Lubbers reached the scene, Bell admitted that he had a gun in his van. Chief Lubbers retrieved three weapons from Bell's

car: a .38 special, a 9mm automatic and a deer rifle. Bell told Chief Lubbers, "I'm sorry I caused you trouble." He did not tell police that he thought Madden had a gun or that Madden had anything in his hand. Bell also told police that Stella had said something but that he did not recall what she had said. Bell did not say anything about Stella stating that Madden had a gun. Chief Lubbers described Bell as "kind of docile and expressionless." Id. at 331.

At trial, the State offered Bell's statement to police. The trial court admitted the statement in evidence.

### III.    Post-Writ Motions

#### A.    Evidentiary Hearing And Appointment Of Counsel (Doc. #19)

To be entitled to an evidentiary hearing in a federal habeas action, petitioner must first make allegations which, if proved, would entitle him to relief. Medina v. Barnes, 71 F.3d 363, 366 (10th Cir. 1995) (citing Townsend v. Sain, 372 U.S. 293, 307 (1963), overruled on other grounds by Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992)). The Court must then determine whether petitioner is entitled to an evidentiary hearing to resolve any disputed facts underlying his claims. Townsend, 372 U.S. at 309. In that regard, 28 U.S.C. § 2254(e)(2) provides as follows:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that
> (A)    the claim relies on –
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B)    the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Here, the factual record is fully developed – Bell had an evidentiary hearing in state court on his claims of cumulative error and ineffective assistance of counsel in pretrial preparation. Bell did not seek an evidentiary hearing on any other issues. After carefully reviewing Bell's allegations, the Court finds for reasons set forth below that his conviction was not "contrary to" or an "unreasonable application" of existing federal law or the Constitution, and it finds no need to further develop the record.

The Court denies Bell's motion for an evidentiary hearing, and further finds no reason to appoint counsel to represent him in this matter.

### B.     Application To Proceed In Forma Pauperis (Doc. #20)

Bell has applied for leave to proceed in forma pauperis. See Application To Proceed In Forma Pauperis (Doc. #20). On July 7, 2005, Magistrate David J. Waxse filed a report and recommendation as to Bell's motion. Magistrate Waxse recommended that the motion be overruled as moot, finding that Bell has already paid his filing fee in this case. To date, Bell has not filed an objection to the report and recommendation. Because Bell has paid his filing fee, the Court adopts the Report And Recommendation and declines to grant Bell in forma pauperis status.

### C.     Motion To Compel (Doc. #22)

On April 8, 2005, Bell filed a motion which seeks to compel the Kansas Department of Corrections to permit him to retain a quantity of legal material which exceeds the quantity which prison regulations allow. The State need not supply legal assistance beyond the preparation of initial pleadings in a petition for a writ of habeas corpus. See Ziegler v. Moore, No. CIV-03-1612-C, 2005 WL 1356486, at *12 (W.D. Okla. May 25, 2005) (plaintiff not entitled to temporary restraining order or preliminary injunction concerning extra storage space for legal materials). Plaintiff has not shown that

without such relief, he will be denied access to the courts. Nor has he shown irreparable injury if he is not permitted additional space to maintain his legal materials. The Court therefore denies plaintiff's motion.

**IV.    Legal Standards**

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. 104-32, 110 Stat. 1214 (1996) (codified in relevant part at 28 U.S.C. § 2254), governs the Court's review in this case. See Paxton v. Ward, 199 F.3d 1197, 1204 (10th Cir. 1999) (AEDPA applies to habeas petitions filed after April 24, 1996, regardless of date of criminal trial forming basis of conviction). Under Section 2254, as amended by AEDPA, the Court may not issue a writ of habeas corpus with respect to any claim which the state court adjudicated on the merits unless that adjudication resulted in a decision:

> (1) . . . that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) . . . that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). The Court may issue a writ of habeas corpus under the "contrary to" clause only if (1) the state court arrived at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or (2) the state court decided a case differently than the Supreme Court on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, the Court may grant habeas relief if the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. at 407-08. The Court may not issue a writ simply because it concludes in its independent judgment that the state court applied clearly established federal law erroneously or incorrectly; the application must have been objectively unreasonable. Id. at 409-11. The Court presumes "that factual determinations made by the

state court are correct, and the petitioner bears the burden of rebutting this presumption with clear and convincing evidence." Martinez v. Zavaras, 330 F.3d 1259, 1262 (10th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)); Fields v. Gibson, 277 F.3d 1203, 1221 (10th Cir. 2002)). This presumption does not extend to legal determinations or to mixed questions of law and fact. Id. (citing Herrera v. Lemaster, 225 F.3d 1176, 1178-79 (10th Cir. 2000)). That is, the "deferential standard of review does not apply if the state court employed the wrong legal standard in deciding the merits of the federal issue." Id. (quoting Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003)). Ultimately, this Court's review of the state court proceedings is quite limited, as Section 2254(d) sets forth a highly deferential standard for evaluating state court rulings. Anderson v. Mullin, 327 F.3d 1148, 1152 (10th Cir. 2003).

## V. **Analysis**

Bell raises seven ineffective assistance issues: (1) trial counsel was not prepared to argue at his motion to suppress hearing; (2) trial counsel did not object to impeachment of his trial testimony; (3) trial counsel did not object to admission of good character evidence of the victim; (4) trial counsel did not object to, and indeed participated in, gender discrimination during jury selection; (5) trial counsel did not object to admission of a letter written from Bell to his wife; (6) trial counsel did not subject the State's case to meaningful adversarial testing; and (7) trial counsel was ineffective in pretrial preparation.[3] Bell also

---

[3] The Court lists Bell's ineffective assistance claims as he identified them in his petition. Bell's brief, however, did not argue them in the same order or identify them in the same language. For example, Bell's petition claims that counsel did not subject the State's case to meaningful adversarial testing but Bell's brief does not use this language anywhere. Bell's petition also argues inadequate pretrial preparation, but his brief makes two claims which could fall in that category: (1) failure to interview all witnesses and (2) counsel's conflict of interest (counsel carried a heavy caseload and did not respond to his letters or communicate frequently with him).

contends that he did not receive a fair trial because counsel and the State engaged in gender discrimination during jury selection; law enforcement officers denied his Fifth Amendment right to counsel after he had invoked such right; the State denied due process rights when post-conviction counsel did not call trial counsel to testify at an evidentiary hearing; and cumulative error.

### A.     Ineffective Assistance

#### 1.     Defaulted Claims: Motion To Suppress, Impeachment, Good Character Evidence

A state prisoner cannot petition for federal habeas corpus relief "unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The exhaustion requirement is satisfied if the federal issue has been properly presented to the highest state court, either by direct review of the conviction or in a postconviction attack. Dever v. Kan. State Penitentiary, 36 F.3d 1531, 1534 (10th Cir. 1994). The procedural default doctrine precludes federal habeas review of a claim that a state court has declined to consider due to petitioner's noncompliance with state procedural rules unless the petitioner can show (1) both cause and prejudice or (2) manifest injustice. Coleman v. Thompson, 501 U.S. 722, 749 (1991). In Coleman, the Supreme Court held that if "the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred[,]" petitioner's claims are procedurally defaulted for purposes of federal habeas "regardless of the decision of the last state court to which petitioner actually presented his claims." 501 U.S. at 735 n.1; see also Dulin v. Cook, 957 F.2d 758, 759 (10th Cir. 1992) (failure to properly present claims in state court constitutes procedural default for purposes of federal habeas review).

Here, the Kansas Court of Appeals found that Bell had abandoned the following ineffective assistance claims by failing to assert them in his initial post-conviction motion under Section 60-1507: (1) failure to prepare for suppression hearing; (2) failure to object to the State's impeachment of Bell's trial testimony; and (3) failure to object to the State's evidence of the victim's good character during the State's case in chief. See Lindsey v. Miami County Nat'l Bank, 267 Kan. 685, 690, 984 P.2d 719, 723 (1999) (issues not raised before trial court cannot be raised for first time on appeal). Because Bell defaulted these claims, the Court cannot hear them unless he can show cause and prejudice or manifest injustice.

To show cause for the default, Bell must demonstrate that an objective, external impediment prevented him from raising the claim. Murray v. Carrier, 477 U.S. 478, 488 (1986). Bell claims that he raised these issues in his Section 60-1507 motion, and he does not acknowledge that he defaulted these claims. In fact, Bell did default these claims. Bell v. State, No. 85,820, at 6 (Kan. Ct. App. Mar. 22, 2002) (unpublished opinion). He offers no argument to show cause for his default. In addition, Bell does not show that a miscarriage of justice may result if the Court does not hear his claims. To make such a showing, petitioner must demonstrate that a constitutional error has probably resulted in the conviction of one who is actually innocent. See Bousley v. United States, 523 U.S. 614, 623 (1998). Bell offers no evidence other than his own opinion that but for counsel's alleged errors, he would not have been found guilty. See Strickland v. Washington, 466 U.S. 668, 694 (1984). Because Bell cannot show cause and prejudice or a miscarriage of justice, the Court cannot hear his claims for ineffective assistance of counsel based on failure to prepare for his suppression hearing, failure to object to impeachment testimony and failure to object to the State's evidence of the victim's good character.

### 2. Pretrial Preparation

Bell next argues that counsel provided ineffective assistance because she failed to properly prepare for trial. Specifically, Bell contends that counsel failed to interview eight witnesses who could have rebutted the State's theory that he was jealous of Madden. Bell first raised this issue in his state habeas appeal. On appeal, the Kansas Court of Appeals remanded the issue for an evidentiary hearing. On remand, the district court applied the two-prong test set forth in Strickland, 466 U.S. at 687: (1) whether counsel's performance fell below an objective standard of reasonableness; and (2) whether a reasonable probability existed that but for counsel's errors, the result of the proceeding would have been different. See Order Following Remand filed November 25, 2002 in No. 00C1139 (citing State v. Rice, 261 Kan. 567, 597-603, 932 P.2d 981 (1997)). Applying Strickland, it found that the totality of the evidence refuted the allegations and that the evidence did not establish a reasonable probability of a different outcome but for the alleged errors. On appeal, the Kansas Court of Appeals applied the same test and concluded that while it could not determine that "counsel's apparent lack of action was a matter of trial strategy," the trial judge – who was best positioned to evaluate performance of counsel – stated that counsel was well-prepared for trial and displayed a high level of professional ability. Bell v. State, 84 P.3d 636 (Kan. Ct. App. 2004) (unpublished opinion). Moreover, the Kansas Court of Appeals held that Bell had not proved prejudice. Id.

The Kansas Court of Appeals decided the merits of Bell's claim under correct federal legal standards. See Strickland, 466 U.S. at 687. Bell agrees that Strickland states the proper standard. See Memorandum In Support Of Petition For Writ Of Habeas Corpus (Doc. #2) filed August 10, 2004 at 39. The decision of the Kansas Court of Appeals that counsel was not ineffective in failing to interview witnesses was not contrary to, and was not an unreasonable application of, clearly established federal law.

Bell does not identify any decision of the United States Supreme Court which holds on similar facts that failure to interview all witnesses results in ineffective assistance of counsel. Bell cites <u>State v. Sanford</u>, 24 Kan. App.2d 518, 938 P.2d 1135 (1997), a state case which addresses failure to investigate alibi witnesses when defendant relies on an alibi defense. Bell, however, did not rely on an alibi defense or allege that his witnesses could provide an alibi. Indeed, Bell admits that he shot the victim, that none of the eight witnesses were present and that the eight witnesses did not have relevant testimony as to what occurred at the time of the shooting. <u>See</u> <u>Transcript Of Motion For New Trial</u> filed January 29, 2003 at 40. The case upon which he relies does not establish that the Kansas Court of Appeals unreasonably applied federal law.

Bell also argues that counsel provided ineffective assistance because of a conflict of interest and that the state court failed to adjudicate this issue. Specifically, Bell contends that counsel had a conflict of interest because she carried a heavy caseload which left little time to work on his case. Bell complains that counsel visited him only four times prior to trial and that she did not respond to more than 60 requests for her to see him. The Kansas Court of Appeals remanded this issue for hearing as part of Bell's ineffective assistance claim based on lack of pretrial preparation. After the evidentiary hearing, the trial court ruled from the bench, determining that four visits did not constitute a de facto case of deficient counsel and that the record showed that counsel was "well-prepared for the trial, and in fact, displayed a high level of professional ability throughout the entire proceedings." <u>Id.</u> at 8-9. On Bell's subsequent appeal to the Kansas Court of Appeals, he filed two briefs – one drafted by appointed counsel and one drafted *pro se*. Neither brief raised the issue, and thus Bell procedurally defaulted this claim. This Court therefore cannot address whether Bell received ineffective assistance of counsel as a result of an alleged conflict of interest.

### 3. Letter From Bell To Stella

Bell next asserts that he received ineffective assistance when counsel did not object to a letter which he wrote Stella during his incarceration prior to trial. The letter stated in part as follows: "I loved you so much that I would have done anything for you and I did, didn't I, But it was all of the world and not of God so it really ment [sic] nothing and I am sorry, sorry so sorry." The Kansas Court of Appeals determined that "any error committed by Bell's attorney in failing to object to the admission of the letter would have been harmless error and is not cause for reversing his conviction." Bell v. State, No. 85,820, at 7 (Kan. Ct. App. Mar. 22, 2002) (unpublished opinion).

Bell argues that this decision was contrary to, and an unreasonable application of, United States Supreme Court precedent. Specifically, Bell contends that instead of finding that failure to object to the letter was harmless error, the Kansas Court of Appeals should have applied the "harmless-beyond-a-reasonable-doubt" standard set forth by the Supreme Court in Chapman v. California, 386 U.S. 18 (1967). In Chapman, the Supreme Court recognized that "harmless-error rules can work very unfair and mischievous results when, for example, highly important and persuasive evidence, or argument, though legally forbidden, finds its way into a trial in which the question of guilt or innocence is a close one." 386 U.S. at 22-23. Here, Bell admitted at trial that he shot the victim, and other individuals witnessed the shooting. Bell has not shown that even if counsel had objected to the letter and even if the letter had not been admitted, the outcome of the trial would have been different. Bell is not entitled to federal habeas corpus relief on this issue.

### B. Gender Discrimination

Bell argues that gender discrimination during jury selection deprived him of a fair trial and due

process. Bell also argues that counsel participated in gender discrimination during jury selection, and thus rendered ineffective assistance. Bell raised the issue of gender discrimination in his Section 60-1507 motion as a matter of due process and equal protection, not as an ineffective assistance claim. See Brief In Support Of K.S.A. 60-1507 Writ Of Habeas Corpus filed April 11, 2000 (No. 00C1139). The Kansas Court of Appeals acknowledged that Bell's due process and equal protection question raised a constitutional issue, but found that he did not show exceptional circumstances which permitted him to raise it for the first time in his Section 60-1507 motion. Bell v. State, No. 85,820, at 6 (Kan. Ct. App. Mar. 22, 2002) (unpublished opinion). The Kansas Court of Appeals did not specifically address Bell's ineffective assistance claim regarding gender discrimination, but noted that "[i]ssues not raised before the trial court will not be considered for the first time on appeal." This Court concludes that Bell procedurally defaulted this claim.

### C. Fifth Amendment Right To Counsel

Bell next argues that law enforcement officers denied his Fifth Amendment right to counsel after he had invoked his right to such counsel. Previously, Bell presented this claim as a claim that the trial court erred in overruling his motion to suppress statements which he made to police after he asked to speak with an attorney. Bell contends that he has presented this issue to the state courts but that they never ruled on the issue. Bell did not present this question on direct appeal, however, and the Kansas Court of Appeals refused to let him raise it for the first time in his petition for relief under Section 60-1507. Again, Bell procedurally defaulted this claim.

### D. Due Process

Ground Three of Bell's petition asserts the following:

17

>  Petitioner was denied his right to Due Process and a meaningful hearing held in a meaningful manner, when appointed counsel refused to require petitioner's trial counsel to appear at the evidentiary hearing held after remand by the court of appeals to consider the ineffectivess [sic] of trial counsel and to what effect thoes [sic] errors would have on petitioner's fair trial.

Petition (Doc. #1) at 8.  Bell's brief sets forth no argument whatsoever which relates to this claim.  Failure to make any argument or cite authority constitutes a waiver of a claim.  See Scott v. Franklin, 122 Fed. App'x 980 (10th Cir. 2005).  To the extent that Bell claims ineffectiveness of counsel during collateral post-conviction proceedings, 28 U.S.C. § 2254(i) bars any relief.

### E. Cumulative Error

Finally, Bell argues that the cumulative effect of trial errors denied him Due Process under the Fifth, Sixth and Fourteenth Amendments of the Constitution.  Bell alleges the following errors:  (1) admission of statements which Bell made to police after he invoked his Fifth Amendment right to counsel; (2) ineffective assistance of counsel for failure to investigate and interview witnesses; (3) trial counsel's gender discrimination during jury selection and failure to object to the State's use of peremptory challenges to remove women from the jury; (4) ineffective assistance by failure to object to evidence of the victim's good character during the State's case in chief; (5) ineffective assistance by failing to object to Bell's letter to his wife during his pre-trial incarceration; (6) ineffective assistance by failing to request an additional jury instruction on lesser included offenses; (7) trial court error in failing to give a jury instruction on whether Bell engaged in a lawful act (self-defense) in an unlawful manner, through the use of excessive force; and (8) reversible trial court error in giving an additional jury instruction without securing Bell's waiver of the right to be present during the instruction.

The Court may find cumulative error when two or more harmless errors result in potential prejudice

to a defendant to the same extent as a single reversible error. Miller v. Mullin, 354 F.3d 1288, 1301 (10th Cir. 2004) (quoting Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir. 2003)). The Court aggregates individual harmless errors and determines whether the cumulative effect is no longer harmless. Id. The Kansas Court of Appeals found one harmless error, and this Court has found no additional errors. This Court cannot find that the Kansas Court of Appeals evaluation of cumulative error was contrary to, or an unreasonable application of, clearly established federal law.

**IT IS THEREFORE ORDERED** that Petition For A Writ Of Habeas Corpus Pursuant To 28 U.S.C § 2254 By A Person In State Custody (Doc. #1) filed August 10, 2004 be and hereby is **DENIED.**

**IT IS FURTHER ORDERED** that petitioner's Motion For An Evidentiary Hearing, And Appointment Of Counsel (Doc. #19) filed March 8, 2005 be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that the Report And Recommendation (Doc. #26) filed July 7, 2005 by Magistrate Judge David J. Waxse is adopted in its entirety. Petitioner's Application To Proceed In Forma Pauperis (Doc. #20) filed March 8, 2005 is **DENIED**.

**IT IS FURTHER ORDERED** that petitioner's Motion For An Order To Compel The Kansas Department Of Correction And Its Facilitys [sic] Not To Limit Petitioner's Legal Material Needed (Doc. #22) filed April 8, 2005 be and hereby is **DENIED**.

Dated this 29th day of September, 2005 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge